1
2
3
4
5
6

Mark A. Nadeau (Arizona Bar No. 011280)
mark.nadeau@dlapiper.com
Kate E. Frenzinger (Arizona Bar No. 023100)
kate.frenzinger@dlapiper.com
DLA Piper LLP (US)
2525 East Camelback Road, Suite 1000
Phoenix, Arizona 85016 4232
480.606.5100 (telephone)
480.606.5101 (facsimile)

7
8

Attorneys for Plaintiff
La Quinta Worldwide, LLC

9
10
11

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

TUCSON DIVISION

12
13
14
15
16
17
18

| | |
|---|---|
| LA QUINTA WORLDWIDE, LLC, ) | |
| )    Plaintiff, ) | Case No. _____ |
| ) | |
| v. ) | |
| ) | |
| Q.R.T.M., S.A. de C.V., ) | **(Jury Trial Demanded)** |
| ) | |
| )    Defendant. ) | |
| ) | |
| ) | |

19

## PLAINTIFF'S ORIGINAL COMPLAINT

20
21
22
23

Plaintiff La Quinta Worldwide, LLC ("La Quinta" or "Plaintiff") files this Original

Complaint against Defendant Q.R.T.M., S.A. de C.V. ("QR" or "Defendant"), and in

support thereof, states as follows:

24
25

## INTRODUCTION

26
27
28

1.      La Quinta is a well-known owner, operator, manager and franchisor of more

than seven hundred (700) hotels and motels in forty-two (42) states, including Arizona.

On information and belief, Defendant QR operates eleven (11) hotel properties in Mexico.

- 1 –

On information and belief, QR has recently started developing its first hotel properties in the United States, including one hotel project in Tucson, Arizona.  QR intends to use the name "Quinta Real," and other marks similar to trademarks used by La Quinta.  QR's conduct constitutes infringement of La Quinta's valid and incontestable trademarks.  La Quinta is entitled to injunctive relief prohibiting QR from operating hotels in the United States using the QUINTA REAL mark or any other confusingly similar marks.

## PARTIES, JURISDICTION AND VENUE

2.      Plaintiff is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business in Irving, Texas.

3.      Defendant is a corporation organized and existing under the laws of Mexico. Defendant may be served by the Clerk of Court, via international certified mail, addressed to: Q.R.T.M., S.A. de C.V., Tlacopac No. 10, Col. Tlacopac, San Angel, D.F. Mexico.

4.      This Court has original subject matter jurisdiction of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338, in that this is a civil action involving claims arising under the trademark laws of the United States.

5.      This Court has general and specific personal jurisdiction over QR pursuant to ARIZ. R. CIV. P. 4.2 and arising from, among other things, QR's contacts and conduct in this district as described herein.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).  A substantial part of the acts or omissions giving rise to the claims herein occurred in this district.

- 2 –

**GENERAL ALLEGATIONS**

7.      Since at least as early as 1968, La Quinta and its predecessors-in-interest have offered hotel and motel services in the United States.  La Quinta provides its hotel and motel services under the mark LA QUINTA and under other design and word marks (hereinafter referred to collectively as the "LA QUINTA Marks").

8.      Consistent with its use of the LA QUINTA Marks, La Quinta has obtained numerous federal registrations of its LA QUINTA Marks.  The earliest of Plaintiff's registrations was obtained in 1969 and has been used by Plaintiff in interstate commerce continuously since then.  Some of these registrations have obtained incontestable status.

9.      Included among these registrations are the following:

| MARK | REG. DATE | REG. NO. | GOOD/SERVICES |
| --- | --- | --- | --- |
| LA QUINTA (Stylized) | 8/26/69 | 875,802 | Motel services |
| LA QUINTA | 12/27/77 | 1,080,641 | Hotel/motel services |
| LA QUINTA INN and Design | 2/22/94 | 1,823,440 | Hotel/motel services |
| LA QUINTA INN and Design | 6/21/94 | 1,841,032 | Hotel/motel services |

10.      Examples of Plaintiff's design marks include:







- 3 –

11.     La Quinta has spent millions of dollars advertising and promoting its hotel and motel services under the LA QUINTA Marks. As a result of such efforts, and as a result of the La Quinta's extensive and continuous use of the LA QUINTA Marks for over a period of forty (40) years, those marks have become well-known to consumers as designations that identify and distinguish the quality hotel and motel services offered by La Quinta.  La Quinta has developed valuable goodwill in the LA QUINTA Marks for its hotel and motel services.

12.     The LA QUINTA Marks are famous within the state of Arizona.

13.     On information and belief, QR operates eleven (11) hotel properties in Mexico.  QR apparently uses the mark QUINTA REAL and similar names and marks (collectively, the "QR Marks") in Mexico, which La Quinta believes include the following:



14.     QR has announced plans to develop a hotel in Tucson, Arizona.   On information and belief, QR has entered into contracts and agreements with a real estate developer and hotel consulting firm in Tucson, Arizona.  In approximately August, 2008, the developer entered into a Development and Real Estate Purchase Agreement with the City of Tucson, Arizona, in which the city authorized the construction of an approximately one hundred twenty (120) room hotel to be operated by QR.  On further information and belief, QR and its developer have petitioned for building permits and tax

credits in connection with the planned hotel.  Construction is apparently scheduled to begin in 2009.

15.     On information and belief, QR intends to use the name "Quinta Real" or a similar name and mark in Tucson in connection with the hotel.  On information and belief, QR has plans to open additional "Quinta Real" hotels in other states.  Media reports have referenced the "Quinta Real" name in connection with Defendant's plans.

16.     QR originally claimed that these marks were being used exclusively in connection with its provision of hotel services in Mexico.

17.     QR has registered a mark with the United States Patent and Trademark Office.  The design mark "QR" was registered on October 21, 2003 (U.S. Trademark Reg. No. 2,776,802).   La Quinta has filed a Petition to Cancel this mark with the Trademark Trial and Appeal Board ("TTAB") (Cancellation No. 92,050,085).

18.     QR also applied for the mark "Quinta Real Grand Class Hotels and Resorts" on June 13, 2001 (Serial No. 78/068,836).  La Quinta has filed an Notice of Opposition with the TTAB against this mark (Opposition No. 91,155,522).  The TTAB granted an order consolidating the Cancellation and Opposition proceedings on November 11, 2008.  This proceeding is pending (Parent Opposition No. 91,155,522).

19.     Notwithstanding Plaintiff's well-known and superior right to the use of the LA QUINTA Marks, Defendant intends to use QUINTA REAL an infringing mark, in connection with the planned Tucson hotel.

20.     Prior to filing this lawsuit, La Quinta advised QR that any use of the QR Marks in the United States would constitute infringement and demanded that QR cease

1
2
3
4

any plans to use of the mark QUINTA REAL and any related marks in the United States.

QR has ignored these notices and demands.

21.     Defendant's apparent intended use and display of the QR Marks will result

in consumer confusion and will mislead the public as to the nature, origin, and

5
6
7
8

sponsorship of Defendant's services.  Such use will cause the erroneous impression that

Defendant's business is affiliated with Plaintiff.

22.     Significant confusion is evidenced by a consumer survey designed and

9
10
11
12
13
14
15

supervised by Philip Johnson, Chief Executive Officer of Leo J. Shapiro & Associates, a

Chicago-based market research and behavioral consulting company.  Mr. Johnson has

designed and supervised hundreds of surveys, and has offered testimony regarding survey

evidence on over fifty (50) occasions in federal and state courts.  A true and correct copy

of Mr. Johnson's declaration and preliminary report is attached hereto as Exhibit A.

16
17
18
19
20
21
22
23

23.     Mr. Johnson designed a double-blind, controlled survey consisting of open-

ended questions intended to test consumer confusion stemming from QR's use of the

QUINTA REAL Mark.  Mr. Johnson's survey interviewed 306 people over the age of 18

in Phoenix and Tucson, Arizona who were either current or prospective guests at hotels or

resorts that cost $150.00 or more per night.  The survey drew respondents from a variety

of test sites in both cities.

24
25
26
27
28

24.     As set forth in his preliminary report, Mr. Johnson found that twenty-nine

per cent (29%) of survey respondents reported the false belief that La Quinta is the source

or sponsor of a hotel or resort called QUINTA REAL.  This number represents a

substantial likelihood of confusion in the United States stemming from use of the "Quinta

Real" Mark, particularly in the State of Arizona.

25.    Defendant's apparent intended use and display of the QR Marks will confuse consumers and will constitute infringement of the LA QUINTA Marks.  This use is wholly without permission or license from Plaintiff, is unfair and deceptive, and will cause irreparable injury to Plaintiff's goodwill, identity, and reputation for which there is no adequate remedy at law.

26.    All conditions precedent to this action have occurred, have been satisfied, or have been waived.

### COUNT I:  FEDERAL TRADEMARK INFRINGEMENT IN VIOLATION OF 15 U.S.C. § 1114(1)

27.    Plaintiff repeats and realleges paragraphs 1 through 25 of its Complaint as if fully set forth herein.

28.    Any use of the mark QUINTA REAL, alone and in combination with other words or marks, in the United States by Defendant constitutes trademark infringement under 15 U.S.C. § 1114 and common law.

29.    QUINTA REAL, and the QR Marks, as used by Defendant and those in concert with Defendant, are used without any consent from Plaintiff.

30.    Plaintiff is informed and believes, and thereon alleges, that Defendant intends to use the QR Marks with the intent of causing confusion or in reckless disregard of the consequences.

31.    Plaintiff is informed and believes, and thereon alleges, that any use of the QR Marks by Defendant will cause confusion with respect to the origin of the parties' respective products and services unless enjoined.

32.     Any use of the QR Marks by Defendant in the United States will result in substantial injury to Plaintiff, including but not limited to dilution of its goodwill and injury to its reputation.

33.     No legal remedy will fully redress the damage that would be done if Defendant's intended use of the QR Marks is not restrained.  Defendant's conduct will cause irreparable harm and injury to Plaintiff, the amount of which will be difficult to ascertain.  Accordingly, Plaintiff has no adequate remedy at law and is entitled to injunctive relief against defendant from engaging in further such unlawful conduct.

34.     Plaintiff further is entitled to recover from Defendant any gains, profits, and advantages obtained as a result of the unlawful conduct alleged herein, in an amount to be determined at trial.

## COUNT II:  FEDERAL UNFAIR COMPETITION IN VIOLATION OF 15 U.S.C. § 1125(a)

35.     Plaintiff repeats and realleges paragraphs 1 through 33 of its Complaint as if fully set forth herein.

36.     The LA QUINTA Marks are strong marks, and are inherently distinctive as that term is generally known and accepted.  The LA QUINTA Marks have obtained incontestable status.

37.     Plaintiff is informed and believes, and thereon alleges, that any use of the QR Marks and any other derivative marks by Defendant in the United States will likely cause confusion with respect to the origin of the parties' respective products and services unless enjoined.

38.     The aforementioned conduct by Defendant constitutes unfair competition.

39.     Plaintiff will be irreparably harmed by Defendant's acts of unfair competition, as alleged herein, unless Defendant is restrained by this Court.

40.     No legal remedy will fully redress the damage that would be done if the QR Marks are used and not restrained.  Accordingly, Plaintiff has no adequate remedy at law and is entitled to injunctive relief against defendant from engaging in further such unlawful conduct.

41.     Plaintiff seeks to recover monetary relief and damages to the extent Defendant has used the QR Marks and caused damages.

## COUNT III:  FEDERAL TRADEMARK DILUTION IN VIOLATION OF 15 U.S.C. § 1125

42.     Plaintiff repeats and realleges paragraphs 1 through 40 of its Complaint as if fully set forth herein.

43.     The LA QUINTA Marks are "famous" as that term is generally known and accepted, and as used in 15 U.S.C. § 1125(c).  The LA QUINTA Marks have obtained incontestable status.

44.     Any use of the QR Marks will cause a likelihood of dilution of the distinctive quality of Plaintiff's registered marks by blurring their uniqueness and singularity.

45.     Any use of the QR Marks will cause a likelihood of injury to Plaintiff's business reputation and tarnishment of its registered marks.

46.     On information and belief, Defendant's conduct is intentional and deliberate.

47. Any use of the QR Marks will result in irreparable harm unless Defendant is restrained by this Court.

48. Plaintiff has no adequate remedy at law.

49. Plaintiff seeks to recover monetary relief and damages to the extent Defendant has used the QR Marks and caused damages.

### COUNT IV:  COMMON LAW UNFAIR COMPETITION

50. Plaintiff repeats and realleges paragraphs 1 through 48 of its Complaint as if fully set forth herein.

51. The LA QUINTA Marks are strong marks, and are inherently distinctive as that term is generally known and accepted.

52. Plaintiff is informed and believes, and thereon alleges, that any use of the QR Marks by Defendant and any other colorable imitation of Plaintiff's LA QUINTA Marks will likely cause confusion with respect to the origin of the parties' respective products and services unless enjoined.

53. The aforementioned conduct by Defendant constitutes unfair competition.

54. Defendant's acts of unfair competition will result in irreparable harm unless Defendant is restrained by this Court.

55. No legal remedy will fully redress the damage that would be done if the QR Marks are used and not restrained.  Accordingly, Plaintiff has no adequate remedy at law and seeks injunctive relief against Defendant from engaging in such unlawful conduct.

56. Plaintiff seeks to recover monetary relief and damages to the extent Defendant has used the QR Marks and caused damages.

- 10 –

## COUNT V:  REQUEST FOR CANCELLATION OF DEFENDANT'S FEDERAL TRADEMARK REGISTRATION

57.    Plaintiff repeats and realleges paragraphs 1 through 55 of its Complaint as if fully set forth herein.

58.    Plaintiff is likely to suffer harm by continued registration of Defendant's QR Mark (U.S. Trademark Reg. No. 2,776,802).  Continued registration of Defendant's QR Mark will confuse and deceive consumers, and will dilute Plaintiff's distinctive marks.

59.    U.S. Trademark Reg. No. 2,776,802 should therefore be cancelled pursuant to 15 U.S.C. § 1119.

## COUNT VI:  REQUEST FOR INJUNCTIVE RELIEF

60.    Plaintiff repeats and realleges paragraphs 1 through 58 of its Complaint as if fully set forth herein.

61.    The nature and magnitude of Defendant's conduct demonstrates the likelihood that Plaintiff will succeed on the merits with respect to the causes of action set forth hereinabove.  The potential recovery of monetary damages will not redress the non-economic harm and injury that will be sustained by Plaintiff as a result of the use of the QR Marks.  Plaintiff has no adequate remedy at law and will be irreparably harmed in the event Defendant's wrongful conduct is not enjoined.  Accordingly, Plaintiff seeks the following injunctive relief.

**A.    Application for Preliminary Injunction**

62.    In order to preserve the status quo, and the property and rights of Plaintiff during the pendency of this action, Defendant should be cited to appear and show cause

1    why it should not be preliminarily restrained from engaging in the conduct described

2    hereinabove.

3
4       63.    Specifically, Plaintiff seeks a preliminary injunction pursuant to 11 U.S.C. §

5    1116(a) restraining Defendant from:

6           1.    Using the QR Marks or any confusingly similar
                  designation, including QUINTA REAL, alone or in
7                 combination with other words or designs, as a domain
                  name,  trademark,  service  mark,  trade  name,
8                 component, or otherwise, to market, advertise, promote,
                  or identify any hotel or motel services provided in the
9                 United States of America, to the extent not produced or
                  authorized by Plaintiff;
10
            2.    Using the QR Marks or any confusingly similar
11                designation, including QUINTA REAL, alone or in
                  combination with other words or designs, as a domain
12                name,  trademark,  service  mark,  trade  name,
                  component, or otherwise, to market, advertise, promote,
13                or identify any travel or hospitality-related products or
                  services offered for sale in the United States of
14                America, to the extent not produced or authorized by
                  Plaintiff;
15
            3.    Causing a likelihood of confusion or misunderstanding
16                as to the source or sponsorship of Defendant's business
                  or services by using confusingly similar or identical
17                trade indicia and dress to that used by Plaintiff;

18          4.    Causing a likelihood of confusion or misunderstanding
                  as to Defendant's affiliation, connection, or association
19                with Plaintiff or any of its services;

20          5.    Further prosecuting the trademark application pending
                  in the United States Patent and Trademark Office
21                (Serial No. 78/068,836); and

22          6.    Further defending registration of U.S. Trademark Reg.
                  No. 2,776,802 in TTAB Cancellation Proceeding No.
23                92,050,085.

24      64.    Such limitations will prevent the likelihood of confusion, injury to business

25   reputation, or dilution of the distinctiveness of Plaintiff's LA QUINTA Marks, symbols,

26
     or forms of advertisement.
27

28

1    65.    Pursuant to 11 U.S.C. § 1116(a), Plaintiff further requests the Court to

2

3    command Defendant to file, within thirty (30) days after the service of such injunction, a

4    report in writing under oath setting forth in detail the manner and form in which

5    Defendant has complied with the injunction.

6    66.    Pursuant to A.R.S. § 44-1448.01, Plaintiff is entitled to a preliminary

7    injunction against QR's commercial use of the QR Marks or any confusingly similar

8
     designation, including QUINTA REAL, within the state of Arizona.
9

10   **B.    Application for Permanent Injunction**

11   67.    Consistent with the relief sought by Plaintiff in connection with its

12   Application for Preliminary Injunction, Plaintiff ultimately requests that upon final trial of

13
     this cause a permanent injunction be issued, pursuant to 11 U.S.C. § 1116(a), restraining
14

15   Defendant from:

16           1.    Using the QR Marks or any confusingly similar
                   designation, including QUINTA REAL, alone or in
17                 combination with other words or designs, as a domain
                   name, trademark, service mark, trade name,
18                 component, or otherwise, to market, advertise, promote,
                   or identify any hotel or motel services provided in the
19                 United States of America, to the extent not produced or
                   authorized by Plaintiff;
20
             2.    Using the QR Marks or any confusingly similar
21                 designation, including QUINTA REAL, alone or in
                   combination with other words or designs, as a domain
22                 name, trademark, service mark, trade name,
                   component, or otherwise, to market, advertise, promote,
23                 or identify any travel or hospitality-related products or
                   services offered for sale in the United States of
24                 America, to the extent not produced or authorized by
                   Plaintiff;
25
             3.    Causing a likelihood of confusion or misunderstanding
26                 as to the source or sponsorship of Defendant's business
                   or services by using confusingly similar or identical
27                 trade indicia and dress to that used by Plaintiff;

28           4.    Causing a likelihood of confusion or misunderstanding
                   as to Defendant's affiliation, connection, or association

- 13 –

1                                 with Plaintiff or any of its services;

2          5.      Further prosecuting the trademark application pending in the United States Patent and Trademark Office (Serial No. 78/068,836); and

3

4          6.      Further defending registration of U.S. Trademark Reg. No. 2,776,802 in TTAB Cancellation Proceeding No. 92,050,085.

5

6       68.      Such limitations are designed to prevent the likelihood of confusion, injury

7 to business reputation, or dilution of the distinctiveness of Plaintiff's LA QUINTA Marks,

8

9 symbols, or forms of advertisement.

10       69.      Pursuant to 11 U.S.C. § 1116(a), Plaintiff further requests the Court to

11 command Defendant to file, within thirty (30) days after the service of such injunction, a

12 report in writing under oath setting forth in detail the manner and form in which

13

14 Defendant has complied with the injunction.

15       70.      Pursuant to A.R.S. § 44-1448.01, Plaintiff is entitled to a permanent

16 injunction against QR's commercial use of the QR Marks or any confusingly similar

17 designation, including QUINTA REAL, within the state of Arizona.

18

19 **PRAYER FOR RELIEF**

20      **WHEREFORE**, Plaintiff La Quinta Worldwide, LLC prays that the Court:

21      a.      Enter judgment in favor of Plaintiff and against Defendant Q.R.T.M., S.A.

22 de C.V. on all of Plaintiff's claims;

23

24      b.      Temporarily and, upon conclusion of a trial on the merits, permanently

25 enjoin and restrain Defendant, its officers, agents, servants, employees, attorneys, and all

26 others in active concert or participation with the Defendant, from:

27          1.      Using the QR Marks or any confusingly similar designation, including QUINTA REAL, alone or in combination with other words or designs, as a domain

28

name, trademark, service mark, trade name, component, or otherwise, to market, advertise, promote, or identify any hotel or motel services provided in the United States of America, to the extent not produced or authorized by Plaintiff;

2.   Using the QR Marks or any confusingly similar designation, including QUINTA REAL, alone or in combination with other words or designs, as a domain name, trademark, service mark, trade name, component, or otherwise, to market, advertise, promote, or identify any travel or hospitality-related products or services offered for sale in the United States of America, to the extent not produced or authorized by Plaintiff;

3.   Causing a likelihood of confusion or misunderstanding as to the source or sponsorship of Defendant's business or services by using confusingly similar or identical trade indicia and dress to that used by Plaintiff;

4.   Causing a likelihood of confusion or misunderstanding as to Defendant's affiliation, connection, or association with Plaintiff or any of its services;

5.   Further prosecuting the trademark application pending in the United States Patent and Trademark Office (Serial No. 78/068,836); and

6.   Further defending registration of U.S. Trademark Reg. No. 2,776,802 in TTAB Cancellation Proceeding No. 92,050,085.

c.   Temporarily and, upon conclusion of a trial on the merits, permanently enjoin and restrain Defendant, its officers, agents, servants, employees, attorneys, and all others in active concert or participation with the Defendant, from using the QR Marks or any confusingly similar designation, including QUINTA REAL, within the state of Arizona.

d.   Exercise its power under 15 U.S.C. § 1119 to order the Commissioner of Patents and Trademarks to cancel the registration of Defendant's U.S. Trademark Registration No. 2,776,802.

e.   Require Defendant to account for and pay over to Plaintiff the Defendant's

- 15 –

1  profits and all damages sustained by Plaintiff;

2        f.     Award Plaintiff its attorney's fees, costs, and expenses under 15 U.S.C. §

3
4  1117; and A.R.S. § 1451 and

5        g.     Award Plaintiff such other relief as the Court may deem just and proper.

6
     Pursuant to Fed. R. Civ. P. R. 38, Plaintiff demands a jury trial for all issues triable

7  by jury.

8
9       RESPECTFULLY SUBMITTED this 27th day of March, 2009.

10

11

12                             s/ Kate E. Frenzinger
                           Mark A. Nadeau

13                             mark.nadeau@dlapiper.com
                           Kate E. Frenzinger

14                             kate.frenzinger@dlapiper.com
                           DLA Piper LLP (US)

15                             2525 East Camelback Road, Suite 1000

16                             Phoenix, Arizona 85016
                           480.606.5100 (telephone)

17                             480.606.5101 (facsimile)

18

19                             **ATTORNEYS FOR PLAINTIFF**
                           **LA QUINTA WORLDWIDE, LLC**

20

21  Of Counsel:

22  Jeffrey Goldfarb
jeffrey.goldfarb@dlapiper.com

23  DLA PIPER LLP (US)
1717 Main Street, Suite 4600

24  Dallas, Texas  75201
214.743.4500 (telephone)

25  972.813.6278 (facsimile)

26

27

28