# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| La Quinta Worldwide LLC, | No. CV-09-00175-TUC-RCC |
| Plaintiff, | **ORDER** |
| v. | |
| Q.R.T.M. SA de CV, | |
| Defendant. | |

## **BACKGROUND**

The Court of Appeals for the Ninth Circuit vacated this Court's permanent injunction granted in this 2009 trademark case against Q.R.T.M. and remanded the case for this Court to determine "on an open record for further analysis of the propriety of a permanent injunction." *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 880 (9th Cir. 2014). The panel was concerned that this Court's analysis did not discuss a fact the panel thought relevant to weighing the equities in this case: "That a permanent injunction in favor of La Quinta here would bar Quinta Real from opening a hotel in the United States under its own name, while at the same time La Quinta would remain free to open hotels and do business in Mexico as 'La Quinta.'" *Id.* The panel did not decide whether this fact was determinative and expressed no opinion on whether the district court should issue a permanent injunction after having taken account of all of the relevant facts. *Id.*

The parties have briefed this matter and stipulated to a post-trial supplemental evidentiary record. (See Docs. 175-178). The Court heard both parties at oral arguments

held on March 23, 2015.  For the reasons mentioned below, the Court will again issue the same permanent injunction in favor of Plaintiff.

**FINDINGS OF FACT**[1]

1. The sight, sound, and meaning of "La Quinta" and "Quinta Real" are similar (meaning, when translated, "country home" and "royal villa") and share an identical dominant word: "Quinta." *Id.* at 876.

2. The following are hotels advertised and currently in operation in Mexico: Quinta Real, La Quinta, Quinta Grijalva, Quinta Mananitas, Quinta Maria Cortez, Quinta Don Jose, Quinta Las Acacias, Quinta Torcasas, Quinta Troppo, Quinta Laredo, and La Quinta Luna. (Trial Tr. Day 2: 64-68).

3. The Mexican hotel marketplace is not the same as the United States' hotel marketplace for a variety of reasons including different: practices in the hotel industry, operating costs and expenses, customer expectations, cultures, primary languages, consumers, brand perceptions, and legal systems for protecting and recognizing trademark rights. (Trial Tr. Day 1: 74-95).

4. At the time of trial, La Quinta had five hotels in Mexico and Quinta Real had eight hotels in Mexico—none in the same cities. However, La Quinta did have plans to build two hotels in cities where Quinta Real was already present. (Doc. 176).

5. Since the 2012 trial, La Quinta has opened one new hotel in Mexico.  Thirteen additional hotels are planned. Five of these hotels are planned in five out of the eight cities where Quinta Real currently operates its hotels. (Doc. 176).

6. La Quinta enforces its brand standards and quality control standards by terminating properties failing to adhere to these requirements. (Trial Tr. Day 1:45:7-21).

---

[1] This Order hereby incorporates the undisputed facts set out in the parties' Proposed Joint Pretrial Order (Doc. 108) and affirmed Findings of Fact from the Court's March 29, 2012 Order (Doc. 161). Further, this Order hereby incorporates the undisputed facts as outlined in the parties' Joint Stipulation to Supplement Post-Trial Evidentiary Record (Doc. 176) and facts affirmed by the Court of Appeals for the Ninth Circuit in *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867 (9th Cir. 2014). The Findings of Fact listed here may repeat from the aforementioned findings of fact and any new findings of fact are for the purposes of addressing the specific remand.

**DISCUSSION**

Pursuant to 15 U.S.C. § 1116, this Court has "the power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the trademark owner." *Perfumebay.com Inc. v. eBay, Inc.*, 506 F.3d 1165, 1177 (9th Cir. 2007). An injunction may only be entered where the requesting party demonstrates: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC.*, 547 U.S. 388, 391 (2006).

*1.   The evidentiary record supports a likelihood of irreparable harm such that a permanent injunction should issue.*

Quinta Real challenges this Court's previous finding that "La Quinta *could* suffer injury to its good will and business reputation" without a permanent injunction. (Doc. 161 at p. 13) (Emphasis added).  Precisely, Quinta Real argues that the Court's finding falls short of the Ninth Circuit Court of Appeals' requirement that "actual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark infringement action." *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1249 (2013) (*citing Flexible Lifeline Sys. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011); *Reno Air Racing Ass'n, Inc., v. McCord*, 452 F.3d 1126, 1137-38 (9th Cir. 2006)); *see also Titaness Light Shop v. Sunlight Supply, Inc.*, 585 Fed. Appx. 390, 391 (vacating the trial court's preliminary injunction and remanding because "The fact that Sunlight's reputation *might* be harmed by the marketing of TLS's products did not establish that irreparable harm to Sunlight's reputation is *likely*." (Emphasis in original)).

In *Herb Reed*, the Ninth Circuit panel criticized the trial court for pronouncing irreparable harm without any evidence proving that "irreparable injury is likely in the absence of an injunction" or evidence speaking "to whether legal remedies, such as

money damages, are inadequate." *Id*. at 1250. Speculation on future harm does not meet the standard of showing "likely" irreparable harm. *Id*. at 1250. "Those seeking injunctive relief must proffer evidence sufficient to establish a likelihood of irreparable harm" and the trial court must make factual findings that support a likelihood of irreparable harm. *Id*. at 1251.

As evidence of the harm it will likely suffer if Quinta Real opened a hotel in its name, La Quinta points to the fact that La Quinta has established brand standards and quality control standards to protect its goodwill and business reputation and that La Quinta has previously terminated franchisees failing to adhere to these requirements. (Trial Tr. Day 1:45:7-21). Quinta Real argues that whatever agreements and standards La Quinta has with its franchisees are of no consequence to any likelihood of irreparable injury.

Here, the Court again finds that La Quinta is likely to suffer irreparable injury if Quinta Real were allowed to open a hotel under its name. The Court of Appeals for the Ninth Circuit affirmed this Court's findings that "La Quinta mark is a strong and valuable" and that "the two marks will compete with each other in the United States with significant harm to La Quinta, the senior user..." *La Quinta*, 762 F.3d at 879. Further, as evidenced by La Quinta's enforcement of brand standards and quality control standards over its own franchisees, the Court finds a strong likely that La Quinta will suffer injury to its good will and business reputation if not allowed to enforce its brand standards and quality control standards over its mark.

While the Court's language in its Order (Doc. 161) was somewhat vague ("could"), the Court now points to specific findings of fact demonstrating how La Quinta's good will and business reputation suffer when its franchisees fail to adhere to its brand standards and quality control standards to the extent that La Quinta terminates these franchisees. Should Quinta Real be allowed to infringe on La Quinta's trademark, La Quinta will likely suffer intangible and irreparable injuries to its good will and business reputation by having no control over the brand standard and quality control of

Quinta Real's hotels in the United States. *See Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991).

### 2. *Monetary damages are inadequate to compensate for La Quinta's likely irreparable injuries.*

La Quinta argues that a permanent injunction is necessary because monetary relief would be inadequate to ensure proper brand protection. La Quinta alleges that any compensatory damages for Quinta Real's infringement on La Quinta's strong and valuable brand would be inadequate to compensate for the loss of control over how a trademark is used by a competitor. *Citing* J.T. McCarthy, McCarthy on Trademarks and Unfair Competition (West 2013 Supp.) at § 30:2 ("The imposition of a compulsory license, permitting the infringer to continue by paying a court-determined royalty to the trademark owner is not a proper remedy.") *See also Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement.").

> Here, the Court reiterates its previous finding that:
>> "Intangible injuries are irreparable because quantifying their harm is impractical or impossible, and, as a result, such injuries cannot be fully remedied by a financial award. In addition to the loss of good will and injury to its business reputation, La Quinta could also suffer a loss of profits as a result of confusion with Quinta Real. Such a loss of profits would [be] difficult, if not impossible to quantify. Therefore, La Quinta has also demonstrated that it has an inadequate remedy at law for the likelihood of confusion caused by Quinta Real's use of the "Quinta Real" mark on the American hotel." (Doc. 161 at p. 13).

Further, the Court also finds that compensatory or monetary damages for such infringement are inadequate and would impose a compulsory license over La Quinta's trademark.

***3.     The balance of hardships (even considering the fact that Quinta Real is enjoined from opening a single hotel in its name in the United States while La Quinta operates and expands freely in Mexico) still weighs in favor of La Quinta and warrant an injunction against Quinta Real.***

The Ninth Circuit Court of Appeals panel remanded this matter for the Court's consideration on whether a permanent injunction against Quinta Real is fair and equitable in light of La Quinta's expanding and unrestrained hotel operations in Mexico. In its previous Order (Doc. 161), this Court found determinative the facts that Quinta Real admitted during trial that it would suffer no prejudice from being forced to name an American hotel something other than "Quinta Real" and that La Quinta would suffer irreparable harm if Quinta Real were permitted to use its "Quinta Real" mark on an American hotel. The Court hereby reaffirms this as a factor in favor of La Quinta in weighing the equities and balancing the hardships in this case.[2]

To answer the Court of Appeals order on remand, the Court hereby also finds that the Mexican hotel marketplace is not the same as the United States' hotel marketplace for a variety of reasons including different: practices in the hotel industry, operating costs and expenses, customer expectations, cultures, primary languages, consumers, brand perceptions, and legal systems for protecting and recognizing trademark rights. (Trial Tr. Day 1: 74-95). Additionally, the Court finds that La Quinta has rapidly expanded in Mexico and will be opening hotels in five of the eight cities where Quinta Real currently has properties in Mexico. Finally, the Court finds that there are eight other hotels with the word Quinta in their name operating in Mexico alongside the parties in this litigation.

The Ninth Circuit Court of Appeals panel was "troubled by the inequitable circumstances" of La Quinta opening hotels in cities where Quinta Real currently operates, but did "not decide that this fact is determinative and [expressed] no opinion on whether the district court should issue a permanent injunction after having taken account

---

[2] During oral argument on this matter, Quinta Real argued that its expert's comment that it would suffer no prejudice if Quinta Real had to adopt another name was a "throwaway" comment. The Court finds that this was not "throwaway" language as Quinta Real had an opportunity to redirect its witness on this topic at trial.

of all the relevant facts." *La Quinta*, 762 F.3d at 876, 880.

The Court here will give some weight to this factor in favor of Quinta Real as an equitable consideration in balancing the hardships. However, the Court finds that this factor is not dispositive. Both hotels operate legally in Mexico, a different country with a separate trademark protection system and operating in a different market. *See La Quinta*, 762 F.3d at 876. While there is some inequity in La Quinta being able to expand freely in Quinta Real's territory while Quinta Real cannot open a single hotel in the United States under its own name, the different hotel practices in each country, the different legal protection systems, the fact that there are eight other hotel properties with the word "Quinta" in their name operating in Mexico, and the fact that La Quinta's operations in Mexico are entirely legal mitigate the weight the Court gives to this factor.

During briefing on this matter, Quinta Real also requested consideration of the factors that if forced to operate under a new name, Quinta Real would somehow be separated from its brand identity, association to Quinta Real's Mexican hotels and history. Further, Quinta Real requested that this Court consider as a factor that it chose its name in good faith. The Court agrees that these are appropriate considerations in balancing the hardships and that these equities weigh in favor Quinta Real.

Nevertheless, the Court finds that the balance of the hardships and equities warrants a permanent injunction against Quinta Real. La Quinta has operated hotels and motels in the United States since 1968; today there are more than 800 La Quinta mid-tier hotels across the United States. *La Quinta*, 762 F.3d at 871-72.[3] Despite the parties' coexistence for twenty-five years, and both using similar marketing channels, the parties have never both operated in a U.S. market where there would be a likelihood of actual confusion. *Id.* at 876; *supra*. The Court here gives great weight to the near forty-seven

---

[3] The only other hotel in the United States bearing the word "Quinta" in its name is "La Quinta Resort and Club", a high-end luxury resort in the California desert that has been in operation since 1926; La Quinta and the La Quinta Resort and Club entered into a settlement agreement limiting the parties' respective territories. (Doc. 165). The Court here finds that the existence this single hotel, located in La Quinta, California and with whom Plaintiff has an agreement does not merit much weight in this case.

- 7 -

years and millions of dollars La Quinta has spent protecting its mark in the United States and contrasts this with Quinta Real's admission that it would suffer no prejudice if forced to open a hotel in the United States under a different name and its proposed use of the QR medallion branding that this Court has already approved.

As such, the Court finds that the balance of hardships warrants a permanent injunction against Quinta Real as requested by Plaintiff.

### 4. *The public interest is best served by an entry of a permanent injunction.*

The Court again finds that the same permanent injunction against Quinta Real would best serve the public. The public has a right to be free from confusion as it participates in the hotel marketplace. *See Internet Specialties W., Inc. v. Milon-DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 993 (9th Cir. 2009) ("The essence of trademark infringement is the likelihood of confusion, and an injunction should be fashioned to prevent just that."); *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1245 (9th Cir. 2013) (the "purpose of trademark law" is to "avoid confusion in the marketplace by allowing a trademark owner to prevent others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner.")

Here, the Court of Appeals for the Ninth Circuit has already upheld this Court's finding that there is a likelihood of confusion between the two marks and this Court's finding that "the two marks will compete with each other in the United States with significant harm to La Quinta, the senior user…" *La Quinta*, 762 F.3d at 879. As such, the Court finds that the same permanent injunction should issue to prevent any future hotel guests from unintentionally staying with the wrong party.

In coming to this conclusion, the Court rejects Quinta Real's arguments that no injunction (descriptive/fair trademark use argument) or a limited injunction should issue. The Court finds that any use of the word "Quinta" is likely to cause the public confusion. *See also La Quinta*, 762 F.3d at 876 (rejecting Quinta Real's argument that "the district court erroneously considered 'Quinta' in isolation from other differentiating elements").

As such, the Court finds that the public interest is best served by an entry of a

permanent injunction against Quinta Real.

**CONCLUSION**

For the aforementioned reasons, the Court finds in favor of issuing the same permanent injunction against Quinta Real.

**IT IS HEREBY ORDERED** affirming and giving full weight to the Court's previous Order (Doc. 162, dated March 29th, 2012);

**IT IS FURTHER ORDERED** that the Clerk of the Court send a courtesy copy of this Order and (Doc. 162) to the Commissioner of Trademarks;

**IT IS FURTHER ORDERED** that the Clerk of the Court shall close this case and enter judgment in favor of Plaintiff in accordance with this Order.

Dated this 31st day of March, 2015.

_____
Raner C. Collins
Chief United States District Judge